Good morning. May it please this honorable court. I am Nouriel Flores, Your Honor. I represent Maryland. I would like to apologize for my accent, Your Honor. This is what you just said. I would like to apologize for my accent. Your Honor, let me start with the finding of the bankruptcy court, when it says that there is an agreement as to the distribution of proceeds as referenced to in the assignment of proceeds. However, the court said that there is no clear evidence as to what the exact distribution of the proceeds should be. With that premise, the court continued to divide the proceeds, and it says 53,000 shall be deducted first for the service of Mr. Watkins. Second, 31,000 shall be deducted for reimbursement of funeral-related expense. And third, 20,000 shall be given to Mystique, the sole beneficiary, Your Honor, only 20,000. And as to the remainder, the court said it is not clear what will happen to the remainder. There is a remainder of 50,000. And the court said that there is no evidence what was to happen to the remainder. This shows that the court was even confused in distributing the proceeds, Your Honor. Well, this whole case is a mass of confusion. Yes, Your Honor. Actually, this distribution, Your Honor, is contrary to what the trustee is asking for. The trustee is asking for half of the proceeds. He's not asking for 52,000 shall be reimbursed for Mr. Watkins. The court said in its third paragraph of its ruling, it says that the basis of its finding is, first, the assignment of proceeds, second, the power of attorney, and third, the subsequent agreement between Katambay and Ting. He also did one more thing on he also said just before that finding, he said that, and you can comment on it, he says, Ms. Ting, however, does not argue for a distribution of proceeds. After he recognizes an incomplete, there was no agreement as to how the proceeds would be distributed, he says that Ms. Ting did not argue for a distribution of the proceeds pursuant to the agreement. Rather, she argues that the contract between herself and Mrs. Katambay is invalid or should be rescinded because of fraud. And so I think what he's saying is you're not contesting how it was distributed. You're saying it was fraud. You want to throw the whole thing out. No. We contend, Your Honor, the assignment of proceeds is void. And secondly, even if it's valid, there is no agreement to distribute the proceeds, because the assignment of proceeds, Your Honor, is not itself an agreement to distribute. But let me comment on the third basis of the Court when it says that the assignment said that it was being done so that Mrs. Katambay could get the proceeds and take care of and is vague about what she's going to take care of, but it anticipated she was going to pay certain things and do certain things. Your Honor, as we have argued in the lower court, Ms. Ting, who lives in the Philippines, who doesn't speak English, did not know this. The assignment of proceeds, Your Honor, was used by Mr. Watkins. Well, let's stop for Mr. Watkins. Let's talk about the agreement. I'm looking at the assignment right now. It says the express purpose of this assignment of proceeds to expedite the payment of claims of said insurance policy or policies. And as I understand the record, apparently Mrs. Ting could have done this, but for her to be assigned to Katambay to do it. Then it says, and to allow the aforesaid Mrs. Katambay to collect said payment or payments and make such distributions in a manner that I have previously agreed with Mrs. Katambay. I agree with you. I don't see what they agreed to do, but she was given the authority to collect and then make certain distributions. At least that's what the bare bones assignment of proceeds says, right? Let me answer you in a long comment, Your Honor. The assignment of proceeds, the purpose of Mr. Watkins in drafting that is to make sure that the insurance company will pay directly to Katambay the proceeds and not to Ting. And that is indicated in the first paragraph of the assignment, Your Honor. Is that the basis of your fraud claim? Yes, Your Honor. This was revealed in a letter of Mr. Watkins to Katambay. When they received the check, the letter says, it's in the record, that, Mrs. Katambay, I received the check. We will go to the bank tomorrow and deposit the proceeds of the check, and then we will give 20,000 to Ting and the rest for both of us. That is the fraud that Mrs. Katambay is saying to the insurance company. Because later on, Your Honor, Katambay and Watkins quarreled. When they quarreled, Katambay revealed and bared to the insurance company this letter which shows the fraud. Your Honor, the fraud is they will give 20,000 to Miss Ting, the beneficiary of 154,000 policy. Mr. Watkins will get 52,000. Mrs. Katambay will get 80,000. How much did Miss Ting get? Your Honor, what happened is that is... Just don't tell me what happened. Just tell me how much she got. She got 75,000, Your Honor, in the summer adjustment in the state court. Your position. Go ahead. All right. What is she looking for now? Your Honor, being the sole beneficiary of the policy, she should get the remainder of the proceeds, Your Honor. Does Katambay get her expenses? Forget about Watkins. Does she get her expenses in facilitating getting the money from the insurance company for burying the dead folks? Your Honor, there's no agreement of reimbursing any receipts, any funeral-related expense. As to, Your Honor, to how much would Katambay get for filing the claim, that is not clear, Your Honor. But, however, there is a testimony of Katambay that she paid Mr. Watkins $500 and admits that she still owes Mr. Watkins another $500 for his service in filing the claim. Well, I take it, though, you're saying there's no agreement on what she should get, so, therefore, she gets a zero, right? Katambay should get nothing. Well, Your Honor, Ms. Stinks testified that yours truly filed another policy and she paid me $200 for that because I only filled out the form, Your Honor, and attached that certificate, and I was able to get the proceeds of another life insurance policy. I only charged $200 for one hour of work. Maybe you should save the rest of your time. Yes, Your Honor. Thank you. Good morning, Your Honors. Nancy Zamora of Zamora & Hoffmeyer representing the appellee in this case, Alfred Segal, the Chapter 7 trustee. I'd like to begin by correcting something in the appellant's reply brief that we didn't have an opportunity to brief, and that was number three, which deals with the Katambay receipts and whether they were properly admitted as evidence. Although Ms. Ting did file a motion to preclude them as evidence at trial, Judge Cirozzolo, at the pretrial hearing, denied that motion and allowed those receipts. I'm sorry. When you were talking, I didn't catch what you were saying was admitted. I'm sorry. Okay. The receipts that deal with the funeral expenses and other related items. Point three of the appellant's reply brief tries to make much of the fact that there was a motion by the appellant to try to keep those receipts from being admitted as evidence at trial. And Judge Cirozzolo, as most bankruptcy judges do, conduct a pretrial hearing, have a pre-trial hearing. And although that was objected to by the appellant at that hearing, Judge Cirozzolo denied the motion. Judge Cirozzolo decided at the pre-trial hearing that the receipts would be part of the evidence considered. Now, were those actually offered and admitted then? They were. At the trial, Judge Cirozzolo stated on the record that all of the evidence that was admitted as evidence at the trial, and there was no need for any further authentication to take place at the trial. Now, what did those receipts add up to? Approximately $32,000. The exact amount, I believe, is in the excerpts of record. And what were those items that comprised that amount? There was the bodies of both individuals, the couple that passed away, had to be flown to the Philippines. There were funeral-related expenses, the wake, various other expenses that related to the funeral and burial of those two individuals. There is no evidence that Ms. Ting or anyone else ever paid funeral expenses other than the receipts we have provided that Ms. Kattenbaugh produced. I would like to offer a quote. Having said that, if you read the bankruptcy judge's findings, in fact, he was a little distressed about how the family was handling this, but he said, I've got to go on. And having done so, he recognizes the assignment, he recognizes the power of attorney, and he specifically says, I do not see an agreement on how this should be distributed, but I'm going to take a whack at it anyway. And it looks like what he did is exactly what you just said. He looked at the receipts paid by Kattenbaugh, and he kind of used and said, well, because she was told she could collect and distribute, he said she was supposed to and she has, so I add them up, and he said, now there's a balance, and I don't know what to do with that. So if there's an agreement to agree or that there was an agreement unspecified, and the judge found a certain thing for paid, refresh my memory, how much money was left over that was distributed here now, that was being contested? There is approximately $80,000, Your Honors, because as was stated, there was $150,000 to begin with. The proceeds themselves were $150,000 plus interest. Right. The state court, before Ms. Kattenbaugh filed bankruptcy, before the trustee was involved here, there was a motion for summary judgment or summary adjudication. The state court, we believe erroneously, awarded one-half of the money, $75,000, to Ms. Tink. She took that money to the Philippines. She brought property. She built a house. It doesn't matter. It doesn't matter what she did. Now we have the balance. She's happy and we have the balance of the money at issue. And that action, as I understand, the balance of the action, which would have been $175,000 or whatever, was then removed into the bankruptcy because of Kattenbaugh's filing, right? Yes, it was being held by the state court. And the state court, we can't go back and look at the state court decision as I see it, okay? Correct. Okay, so now we're looking at the remainder, which you say is about $80,000. Correct, Your Honor. And you have receipts and evidence for about $32,000. We have $32,000. And you have a receipt, plus the invoice of $52,000 from Mr. Watkins for the services he provided as the agent for Ms. Kattenbaugh in producing the insurance policy and taking it through the process, and that amount has actually been allowed as a claim in the bankruptcy for $60,000. For how much? $60,000. Isn't that just unconscionable? There is a stipulation. There is an order by Judge Giorzolo. There was an adversary proceeding involving Ms. Kattenbaugh as the debtor and Mr. Watkins, and there's an allowed claim that the trustee has agreed to for $60,000. Isn't that unconscionable? No, Your Honor. It is not unconscionable. What did he do? He provided services as a claim adjuster in getting the insurance proceeds paid. His contract was for one-third, and that has been invoiced and that has been approved, and there is nothing unconscionable about that. That is a contract. That is a very standard procedure. But you have to go further than that, don't you? The proceeds all belong to Mrs. Ting when you first start. And so you have to find that there was some sort of agreement that Kattenbaugh could actually get into that onerous contract with Watkins. And I'm having a problem with that. What's your best argument with regard to what the bankruptcy judge, to justify that he could actually look at that expenditure by Mrs. Kattenbaugh? Your Honor, as you stated, there is an assignment. The assignment says that Mrs. Kattenbaugh is to get the money and to distribute it pursuant to the agreement she had with Mrs. Ting. But we don't know what that agreement is. We don't know what that is. But we know what the course of conduct was, Your Honors. And we know that the course of conduct was the one that she sold it all. I mean, the thing is, I think all of us are having this problem because even the judge says I don't know what the agreement is. Everybody says I don't know what the agreement is, but you're going to say your best case is that because she spent it and because there was an assignment, it's okay. Is that about it? We have the evidence that the course of conduct was that she paid for the funeral expenses, she paid for services to have the insurance proceeds obtained, and there was an agreement between the families to split the money. Well, there's no evidence of that. What if the families decided these were stinking people and we're glad they're dead and we're going to split the money? They could have said anything. We don't know because the judge acknowledges they don't know. Your Honor, there's deposition testimony from Ms. Kattenbeil that was admitted as evidence at trial which states that she was to be reimbursed all expenses and the money was to be split between the two of them. Ms. Ting was found not to be a credible evidence by Judge Rizzolo, and he is in the best position as the trier of fact to listen to and to judge the credibility of witnesses as well as to look at all of the evidence. He did so in this case. There was no evidence whatsoever of fraud or duress admitted at trial or even presented at trial by Ms. Ting, and that is clearly stated on the record. But, counsel, it's a very puzzling case because presenting a death certificate and proof of who you are would have gotten the insurance proceeds. That's all that was needed. Your Honor, I'm sorry. There's no evidence that that was all that was needed in this case. Well, common sense tells me that. I've processed a lot of insurance policies for clients over the years. Your Honor, it was more complicated in this case because Ms. Ting was in the Philippines, and in fact what was being done was to benefit her with regard to exchange rates, taxes, and many other services that were being provided to Ms. Kattenbeil and Ms. Ting. Is that in the record? That is in the record. Does that go to Watkins' fee or does that go to Kattenbaum's claim for payments? I believe it goes to the Watkins' fee, Your Honor, and it also goes to the fact that why Ms. Kattenbeil was an essential agent and element in this case with regard to Ms. Ting as the beneficiary of this policy. What was done about taxes? The money was to be deposited in the United States to assist in tax planning in the Philippines. There would be very onerous tax consequences and exchange rate consequences depending upon how that money was deposited and how it was treated and how it was invested and whether it went as a lump sum to the Philippines. And that was tax benefits to Ting? That's correct, Your Honor. That was part of the planning process in this case. Part of their agreement? That was part of the agreement. It's nonexistent? That was part of the services and part of the agreement. And the agreement was existent, Your Honor, and there is no evidence that there was not an agreement between Kattenbaum and Ting. Well, there's contested evidence, and the judge resolved the contested facts. That's correct. And, again, the judge is in the best position to do that. This is a clear error standard, as Your Honors know, and as we have cited in our brief with Ninth Circuit authority and U.S. Supreme Court authority, there is no clear error here. The judge considered the evidence. He considered the credibility of witnesses. This should not be a retrial of the facts. Is this a case that ought to be settled? Your Honor, Ms. Ting got her one-half of the funds before the bankruptcy was filed. That's not the question. We've gone through mediation. There was attempted settlement. It did not occur. And, in fact, we're here today because Ms. Ting has been unreasonable. Because what? Ms. Ting is wrong, and she's been unreasonable in settlement discussions. And so we arrived here at the Ninth Circuit on this appeal. Did you appear before our mediator? Your Honor, we discussed with your mediator on the phone. We had several mediation sessions before the bankruptcy court trial, which would have been the appropriate time to settle this case, and it did not occur, notwithstanding the best efforts of the trustee and the mediator who has a perfect track record until this case. Thank you. What if we send this back to the bankruptcy judge and ask him to make a determination on the terms of the agreement between these two ladies as to how the funds were to be distributed? Your Honor, I believe he's done that because he looked at all of the evidence that And he determined that the expenses were to be paid and the money was to be split 50-50. And, in fact, he said on the record that there should have been more money paid to the estate, but since it was already dispersed by the State court, that was impossible to do. So his finding was actually that there should have been more money paid to the estate as its share. Were his findings specifically directed at this problem? Your Honor, yes, I believe his findings were. In fact, he said he didn't know what the agreement was. He was going to do it anyway. He was going to look through what happened, and either he made a right decision or a wrong decision. Isn't that correct? Either he was right factually, and it's not clearly erroneous, or it's clearly erroneous. Your Honor, it's not. Is there any further evidence that he can take? I mean, I think the only way he could do it is to take more evidence, but Your Honor, I think all of the evidence was presented at trial. I think Judge Serzolo took all of that evidence and made his findings based on that, and I don't believe there's any clear error here. I don't believe there's any other interpretation than the one that he reached. And again, there should be great deference given to the trial court, the trier of fact who's in the position to judge the credibility and to consider all of the evidence. Okay. Thank you. Thank you, Your Honor. Your Honor, in the settlement conference, we offered 10,000, Your Honor, in the bankruptcy court, and we increased our offer of 30,000 in this court, Your Honor. And that is for the service of a claims adjuster in just filing this claim, Your Honor. Your client was going to come up with $20,000. 30. 30. 30. We offered 30, Your Honor. 30. 30. And that is for the service of a claims adjuster in this court. It is bid for the mediator of this court, Your Honor. But let me just talk about the... Let me stop there just a second. Is that offer still open? I guess so. Is that offer still open? Yes, Your Honor. Well, go to the next step. If you win on your fraud claim, they get zero, right? Yes, Your Honor. They get nothing. Yes, Your Honor. Is it your position that the bankruptcy judge did not have sufficient evidence before him to determine what the agreement and payment of the expenses should be or reimburse to Mrs. Cannondale? Your Honor, the reimbursement of expenses was not agreed upon. I'm saying was there enough evidence in the record for him to make a ruling, and is he clearly erroneous? Yes, Your Honor. If you look at the expenses, Your Honor, you're talking about there is a list of one, the bulk of the expenses is for airline tickets. That was spent a year after the agreement. No, I'm not talking about the expenses themselves. I'm saying if you looked at the legitimate expenses to bury the folks that were killed, and you're talking about approximately $30,000, I'm saying was he clearly erroneous to say then there was enough evidence to go further and find that these other expenses should be reimbursed to the state? It is because there was no agreement to reimburse the expenses of the Katambay family in going to the Philippines because these are expenses of the Katambay family. The family of this thing, they are in the Philippines, Your Honor. They paid for the funeral of Mr. Ting. The two sisters of Ms. Katambay were flown back to the Philippines, and they have the family here, so they have to go to the Philippines. And the expenses of airline tickets, Your Honor, they claim should be reimbursed. But if you look at the receipts, Your Honor, the tickets were a year after the burial. That's the date of the receipt. And also, Your Honor, they included 13,000 of expenses for attorney's fees. What does an attorney do with a funeral, Your Honor? Well, I think Mr. Watkins, $60,000 just kind of makes everything impossible because you can't get around the $60,000, and that kind of messes up your settlement. Or you can see the expenses, and you can see the fact that you could get the proceeds, but then you throw $60,000 for this person in there. It kind of makes things impossible to deal with. Your Honor, there is a ruling in the state court. Mr. Watkins filed a case against Ms. Ting for his services, and the court said, No, you don't have any cost of action for the $52,000 that you are claiming against Ms. Ting. Is there another question, Your Honor? Thank you, Your Honor. The matter will stand submitted, and we'll go to the next case. Jorquez v. Ashcroft. What a crazy case. You know, they all are. Well, it's a typical domestic relationship.
judges: B. Fletcher, Pregerson, Brunetti